THE WEST JERSEY AND SEASHORE RAILROAD COMPANY

*v.*

THE TOWNSHIP OF WATERFORD et al.

[Filed May 14th, 1903.]

1. The charter of the Camden and Atlantic Railroad Company (*P. L. of 1852 p. 268 § 9*) makes it the duty of the company to construct and keep in repair good and sufficient bridges over or under the said railroad where any public road crosses the same, and to alter or grade said roads so that passage shall not be impeded thereby. This clause confers upon the railroad company the power to alter the grade of the public highways so as to carry them over the railroad tracks by overhead bridges.

2. To justify such alteration of grade of the public highway there must be reasonable cause for such a change. The fact that the company's trains cross the public highway, traveling at a speed of seventy miles an hour, is reasonable cause for the carrying of the public highways across the railroad tracks by overhead bridges.

3. The committee of the township, in which the crossing is located, has no power to prevent the railroad company from erecting such overhead bridges and making the incidental changes in the grade of the public highways.

4. If the railroad company constructs an insufficient bridge, that fact does not authorize the committee of the township, in which the crossing is situate, to prevent the building of any other overhead bridge in that township. If such a bridge be insufficient, the proper proceeding is to invoke the action of lawful authority for the correction of the defects of that particular structure.

5. The charter of the Camden and Atlantic Railroad Company makes it the duty of that company and its successors not only to construct good and sufficient bridges for the purposes named, but also to keep them in repair continuously.

On bill for injunction, answer and affidavits.

The bill is filed to restrain the township of Waterford, in the county of Camden, and the members of its township committee, from hindering the complainant in the erection of an overhead crossing to carry a public highway, at Franklin avenue, near West Berlin, in said township, across the Camden and Atlantic railroad, owned and operated by the complainant company.

It appears that the railroad crossing in question is on that part of the complainant company's system which was formerly the Camden and Atlantic railroad. For the successful conduct of the complainant company's business it is necessary to run trains at high speed, reaching seventy miles an hour at times, thus rendering the public roads which cross the complainant's railroad at grade, very dangerous to travelers along those highways. Passengers traveling on the trains are also subjected to danger of injury by the liability to collisions between the railroad trains and vehicles crossing the tracks on the highways, and consequent derailing of the trains.

In order to meet the requirements of their business, without thus endangering the public safety, the complainant company arranged to abolish all grade crossings of the public highways over its railroad within the township of Waterford, and, at its own expense, to erect overhead bridges, carrying the public highways at all such places across the complainant's railroad. The

West Jersey & Seashore R. R. Co. *v.* Waterford.

complainant submitted a proposition to this effect to the township of Waterford.

On the 14th day of August, 1900, the township committee passed a resolution authorizing the complainant company to construct overhead bridges in that township, carrying the public highway across the complainant's railroad at a grade of seven feet per hundred, provided the owners of property adjoining the embankments of such crossings should be compensated, and should agree to the plan submitted by the complainant company. A copy of this resolution of the township committee was given to the complainant company.

Subsequently to the receipt of that resolution the complainant company entered into negotiations with the owners of land adjacent to the crossing at Franklin avenue, near West Berlin, in the township of Waterford, and obtained their approval of the plan for the elevated crossing over that avenue, and, by the payment of $1,500, purchased the consent of those owners to that improvement, and also about half an acre of land necessary for its accomplishment.

In the month of September, 1902, the complainant company proceeded to erect the bridge carrying the public road at Franklin avenue across the railroad above grade. It also entered into contracts for the construction of the improvement at a cost of over $11,000. In the early part of the month of October, 1902, work was begun for the change of grade. A temporary bridge was put in the place of a planked road theretofore used at the crossing, to enable the public to cross during the construction of an overhead bridge. On October 17th, while the complainant's foreman and a gang of men were engaged in the work, he was arrested, on complaint of the township committee, and was placed under bonds not to obstruct the highway and to keep the peace.

The bill alleges that the complainant thereupon sent for the original resolution adopted by the township committee authorizing the crossing, and was thereupon informed, for the first time, that the township committee had repealed the resolution in question, and defendants then stated that if the action already taken in arresting and bonding the foreman was insufficient to stop the work, they would station guards, with shotguns, with

instructions to use them if any attempt was made to proceed with the work. The complainant avers that no objection of any kind or character had ever been offered to the proposed construction, and that it relied upon the above-named resolution and its purchase of the land and the consent of the adjoining owners for the construction of the overhead crossing; that it will be greatly damaged if prevented from constructing said overhead crossing, the safety of travel over its railroad by the general public will be decreased, the expense of maintenance of maintaining watchmen at the crossing will be increased, and the complainant's plan for a general improvement of its railroad and the abolition of all grade crossings will be interrupted. The complainant further alleges that the speed demanded by the traveling public requires trains to run, at times, at the rate of seventy miles an hour, causing traveling on the public highways to be dangerous wherever they cross its railroad at grade, and travel on its railroad to be dangerous because of the liability of its trains to come into collision with vehicles passing along the public highway over its railroad tracks at grade, thus derailing its cars.

The complainant alleges that, by the provisions of the charter of the Camden and Atlantic Railroad Company (*P. L. of 1852 p. 268 § 9*), under whose powers and duties the complainant operates its railroad, it is made the duty of the complainant to construct and keep in repair good and sufficient bridges over and under its railroad wherever a public or other road crosses the same, and to alter and grade the said public road so that the passage and repassage of carriages, horses, &c., over the same shall not be impeded; that the construction of overhead crossings along the whole length of its road from Camden to Atlantic City is a reasonable exercise of the complainant's power to make changes in the grade of public highways crossing its railroad, and it expressly avers that such powers reside in the complainant as in the said Camden and Atlantic Railroad Company, and was being lawfully exercised by the construction of the overhead crossing in question.

The complainant prays that the defendants may be restrained from hindering or interfering with the construction of the overhead crossing in question.

The defendants answer the bill, admitting that the complainant is operating the railroad in question, and that the resolution set out in the bill was passed by the Waterford township committee, but aver that it was passed at an informal meeting, without any notice and without advertisement and without authority; that it was without any binding effect upon the township of Waterford, and was beyond the power of the township committee to pass it. The answer admits that the person in charge of the work of constructing the bridge over the railroad was arrested for obstructing the highway, and placed under bond, because, at request, he refused to desist from that work, and that threats of force were made if the obstruction of the highway at Franklin avenue, in the construction of the overhead bridge at that point, was continued. The answer sets out a resolution of the township committee, under date of March 4th, 1902, repealing the previous resolution of the 14th of August, 1900, and states that a copy of the repealing resolution was left at the office of the superintendent of the complainant company on the 30th day of September, 1902. The defendants allege that the terms of the contract for the construction of the bridge make it a nuisance and a serious impediment to public travel and business; that the scheme of the complainant, if carried out, would cause ten additional overhead bridges to be built in the village of Berlin, in the township of Waterford, and would endanger the life and limb of citizens using such crossings; that the proposed bridge is, in its dimensions and construction, insufficient, unstable and dangerous, and if all crossings in said township are to be similarly bridged, the taxpayers of the township will not be able to sustain the expense of keeping the same in repair. The defendants aver that their acts of interference and prevention, referred to in the bill, at Franklin avenue are lawful and justifiable; that the construction of overhead bridges across the complainant's railroad would greatly increase the danger of accidents and the risk of the public, and make the public and other highways in the township well-nigh impassable.

The defendants expressly deny the authority of the complainant company, under the charter of the Camden and Atlantic Railroad Company, to build the overhead bridges referred to in

the complainant's bill, and to change the grade of the public road in the township of Waterford, and also deny that such bridges are a necessity in any sense; on the contrary, assert they are a menace and a nuisance, and pray the same benefit of their answer as if they had demurred to the bill.

Affidavits annexed to the defendants' answer admit that the defendants have stopped the construction of the overhead bridge at Franklin avenue, by arresting the complainant company's foreman in charge of that work, declaring that force would be used if necessary to stop "further transgressions." These affidavits also show that the ground upon which the defendants oppose the building of the bridge carrying Franklin avenue over the railroad is that the complainant company had previously built another overhead bridge at another crossing of its railroad and the public highway; that this other structure was found to be insufficient and unsatisfactory and a public nuisance; that freeholders of the township petitioned the township committee to have the highway made passable where this other inefficient and defective bridge was built; that thereupon the township committee passed the repealing resolution rescinding the previous grant of authority to the complainant to build overhead crossings in the township, and caused a copy of the repealing resolution to be served upon the superintendent of the complainant company. The affidavits also state the anticipation of the township committee defendant that the proposed structure at Franklin avenue will, if permitted to be completed, be as much of a nuisance as is the overhead bridge already constructed, and they also state the opinion of the township committee that such bridges, besides interfering with public travel and increasing the risk of accidents, will become a source of larger and continued expense to the taxpayers of the township, because of repairs necessary to keep them at all passable, and that they will destroy the appearance of the town of Berlin and depreciate the value of the best residences there situate. The affidavits also express the opinion that overhead bridges are not a necessity, and that they will not enable the complainant company to drive its trains at a higher rate of speed than they have for the past two or three years.

The application for a preliminary injunction came to a hearing upon the bill and affidavits, and the answer of the defendants and the affidavits annexed thereto.

*Mr. Joseph H. Gaskill,* for the complainant.

*Mr. John W. Wescott,* for the defendants.

Grey, V. C.

The defence in this case, so far as it attacks the character of the structure proposed to be erected by the complainant company to carry the public highway across its railroad tracks by an overhead bridge at Franklin avenue, proceeds upon a conjecture that the proposed bridge will be as bad as another bridge has been found to be, which the complainant previously erected at West Berlin. One of the defendants' affidavits indicates that the consent of the township committee to the erection of overhead bridges was rescinded in order to compel the complainant company to make the previously-built bridge at West Berlin conveniently passable to travelers of the highway crossing that bridge—that is, the township committee say to the complainant company: "The overhead bridge you have erected at West Berlin is a nuisance; until you make that bridge satisfactory for public travel, you shall not erect any other overhead bridges in Waterford township."

If the complainant company has erected an insufficient overhead bridge at West Berlin, it may be good reason why some legal procedure should be taken to compel the reformation of that bridge, but it is no reason for preventing the building of any other overhead bridge in the township. Each structure must stand upon its own merits. If any be defective in meeting the requirements of a lawful bridge, the proper authority may be invoked by proceedings for the correction of the defects of that particular structure.

The proposed bridge at Franklin avenue has not yet progressed sufficiently towards completion to indicate whether it will sufficiently carry the public highway across the railroad tracks. It would certainly be unreasonable to prevent its erection because

it may possibly be insufficient unless the detail of its proposed finished construction were proven. No such proof is offered. Instead the defendants' witnesses guess that it will be like another structure whose qualities they denounce.

The whole justification of the defendants' interference preventing the construction of overhead bridges to carry the public roads across above the grade of railroad tracks is based upon the assumption that the township committee may lawfully prevent the complainant company from altering the grade of the public highways of the township so that they may be carried overhead across the railroad tracks.

The special acts incorporating those companies which were organized before the passage of the General Railroad act of 1873, contain clauses imposing upon those companies the duty to provide bridges to carry the public highways over or under the railroad tracks. The General Railroad act also contains such a clause applicable to companies incorporated under its provisions. *Gen. Stat. p. 2661 § 84.* The special charter of the Camden and Atlantic Railroad Company (*P. L. of 1852 p. 268 § 9*) makes it the duty of that company

"to construct and keep in repair good and sufficient bridges or passages over or under the said railroad where any public or other road shall cross the same and *to alter and grade the said roads* so that passage of carriages, horses and cattle, passing and repassing, shall not be impeded thereby."

A similar clause was the ninth section of the charter of the Central Railroad Company of New Jersey. *P. L. of 1843 p. 133.* The Central Railroad Company was indicted, in Warren county, for obstructing a public street. It appeared that the street in question had formerly crossed over the surface of the railroad company's tracks. The company altered the position of the highway in this respect, and passed it through a tunnel under its tracks. On the part of the state it was denied that the company had the power to make this alteration, and this denial formed the substantial foundation for the indictment.

The supreme court declared that the obligation imposed by the company's charter was a continuing duty, which, in its per-

formance, must be measured by circumstances, and as an illustration stated this proposition: "Suppose a public street in a town had been originally laid over the surface of the railroad tracks, and that, by reason of the growth of the company's business in that locality, its trains should pass in such quick succession as to render the street almost impassable. Could it be pretended, under these circumstances, that the company could discharge itself from the obligation which the section in question imposed, except by passing the street thus obstructed under its road, so as to restore it to public use?" The court declared that the duty prescribed was, at all times and under all circumstances, to keep the public highways at the points where they crossed the railroad in a condition fit for safe and convenient use, and that, in order to accomplish this end, the power to alter the grade of the road as public emergencies require, so as to pass it, if necessary, under the railroad tracks, must reside in the corporation. *State* v. *Central Railroad Co., 3 Vr. 221.*

It should be noted that the clause of the charter presently under consideration, that of the Camden and Atlantic Railroad Company, under which the complainant company in this cause is operating, contains express words making it the duty of that company "to alter and grade" the public highways where they cross the railroad company's tracks, so that passing and repassing shall not be impeded. In the *Central Railroad Case,* above cited, those words are absent, but the court gave to that charter the same effect by construction. In the present case the duty of the railroad company to carry the road across its tracks off grade is explicitly declared in its charter.

The judgment above cited was made the basis of the decision of the case of *Palmyra* v. *Pennsylvania Railroad Co., 17 Dick. Ch. Rep. 601,* where all the cases on the subject are collated and compared. On appeal from that decision the court of appeals (*18 Dick. Ch. Rep. 799*) affirmed the decree of this court on the opinion here expressed. The ground of challenge in the present case, of the complainant's right to carry the highways across its tracks by an overhead bridge, is, in principle, the same as was set up and overruled in the case of *State* v. *Central Railroad Co.,* above quoted. Neither court decisions nor statutory enactments

have been cited on this argument which in any way justify the interference by the township committee with the complainant company's proposed improvements.

Some of the defendants' affidavits do express the opinion that overhead bridges, carrying the highways across the railroad tracks above the grade of the latter, will be more dangerous to the traveling public than are crossings made at grade. This proposition seems to be so impossible of acceptation as to be unworthy of serious consideration.

There is a plain showing in the complainant's bill and affidavits that the nature of the business carried on over the company's tracks, by trains traveling at the rate of seventy miles an hour, will be highly dangerous to travelers who, on the highways, cross the tracks at grade. The proposition to relieve the public traveling the highways, or in the complainant company's railroad cars, from the danger of grade collisions between the railroad company's trains and teams traveling the highway and crossing at grade is entirely reasonable.

The expense of making and maintaining such overhead bridges must be assumed and carried by the railroad company, upon whom, by the statute, is imposed the continuing duty of maintaining such crossings.

No justification appears in the defendants' answer or annexed affidavits for their interference with the exercise by the railroad company of its duty to carry the highways across its tracks without impeding the passage and repassage of carriages and passengers along the public highway.

A preliminary injunction should be allowed restraining the defendants in accordance with the prayer of the bill of complaint.